NO. 07-09-0166-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 23, 2009
_____

IN THE INTEREST OF J.N., A CHILD
_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 24,589; HONORABLE DAN MIKE BIRD, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Samantha Bradford, appeals a Final Order in Suit Affecting the Parent-Child Relationship in which the trial court terminated the parent-child relationship between Bradford and her daughter, J.N.[1]  By four issues, Bradford contends that there is legally and factually insufficient evidence to support the judgment of termination.  Concluding that the record contains factually insufficient evidence that termination of Bradford's parental rights is in the best of the child, we will reverse the judgment and remand the cause.

---

[1] See TEX. R. APP. P. 9.8(b)(1)(A).

## Background

Bradford is the biological mother of J.N. (the child). In April of 2007, the Department of Family and Protective Services (Department), appellee, received a report that the child was extensively bruised. The Department investigated the report and discovered that the child had a three to four inch, red and purple bruising in her vaginal and rectal area as well as approximately five quarter-sized bruises on her chest. The child was taken to a hospital for evaluation, which confirmed that the child's condition was, in fact, bruising.

On the evening during which the child sustained the bruising, Bradford indicated that she had left the child with her boyfriend, Shaun McGee, when she went to work. Before Bradford left for work, the child did not have any bruising or diaper rash in her vaginal or rectal areas. According to the report received by the Department, McGee called Bradford at work to inform her that the child was red. Bradford assumed that it was diaper rash so she told McGee to put ointment on it. When Bradford returned home from work, she checked on the child's condition, but, due to it being dark at that time, she continued to believe that the child simply had a bad case of diaper rash. While Bradford had previously taken the child to the hospital for bad diaper rash, she did not seek medical attention on this occasion because she was afraid that the Department would become involved in the case.

The Department filed suit to terminate the parental rights of Bradford due to violations of Texas Family Code section 161.001(1)(D), (E), and (O) and because termination would be in the best interest of the child. See TEX. FAM. CODE ANN. § 161.001

(Vernon Supp. 2009).[2]  At the beginning of the resulting trial, genetic testing established that Jeremy Cook was the biological father of the child.  The trial court signed an order establishing that Cook is the child's father and the Department expressly indicated that it was not seeking termination of Cook's parental rights.  After a bench trial, the trial court found, by clear and convincing evidence, that Bradford had (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Bradford to obtain the return of the child.  See § 161.001(1)(D), (E), (O).  In addition, the trial court found, by clear and convincing evidence, that termination of Bradford's parental rights would be in the best interest of the child.  See § 161.001(2).  On the basis of these findings, the trial court ordered termination of the parent-child relationship between Bradford and the child.

Bradford appeals the trial court's order terminating her parental rights contending that each of the trial court's findings under section 161.001 is not supported by legally and factually sufficient evidence.

---

[2] Further references to the Texas Family Code will be by reference to "section ___" or "§ ___."

Termination of Parental Rights

Parents' rights to "the companionship, care, custody and management" of their children are constitutional interests "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In a termination case, the State seeks not merely to limit those rights, but to end them finally and irrevocably–to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. See § 161.206; Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).

Because termination of parental rights is such a drastic act, due process requires that the petitioner justify termination by clear and convincing evidence. See § 161.206(a); In re G.M., 596 S.W.2d 846, 846-47 (Tex. 1980). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007. Because of the severity and permanency of the termination of a parent-child relationship, termination proceedings should be strictly scrutinized and involuntary termination statutes are strictly construed in favor of the parent. Holick, 685 S.W.2d at 20-21.

Section 161.001 sets out a two-pronged test for the involuntary termination of a parent-child relationship. See § 161.001. The trial court must find, by clear and convincing evidence, that the parent has engaged in one of the grounds for termination found in section 161.001(1) and that termination of the parent-child relationship is in the best interest of the child. See § 161.001; Horvatich v. Tex. Dep't of Protective & Regulatory

4

Servs., 78 S.W.3d 594, 596 (Tex.App.–Austin 2002, no pet.). The trial court must find both a statutory ground for termination and that termination would be in the best interest of the child before it may terminate the parent's rights. See Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976); Horvatich, 78 S.W.3d at 596. While the trial court must find both prongs to terminate, often, evidence of statutory grounds for termination will be relevant to the determination of whether termination is in the best interest of the child. See In re M.A.N.M, 75 S.W.3d 73, 79 (Tex.App.–San Antonio 2002, no pet.); In re D.M., 58 S.W.3d 801, 814 (Tex.App.–Fort Worth 2001, no pet.).

## Standard of Review

When both legal and factual sufficiency challenges are presented, the reviewing court first reviews the legal sufficiency of the evidence. Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). Because termination requires that each of the two prongs be established by clear and convincing evidence, review of the legal and factual sufficiency of the evidence is necessarily affected by the burden of proof required at trial. In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002). As such, we review the legal sufficiency of the evidence in a termination proceeding by considering all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor, to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. Id. at 266. In a factual sufficiency review of a termination proceeding, we review all of the evidence in a neutral light to determine whether the evidence is such that the finder of fact could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).

5

Statutory Grounds for Termination

By her second, third, and fourth issues, Bradford challenges the legal and factual sufficiency of each of the statutory grounds for termination found by the trial court. Only one finding alleged under section 161.001(1) is necessary to support a judgment of termination. In re D.M., 58 S.W.3d at 813.

In reviewing the legal sufficiency of the evidence, we will consider the evidence that supports the trial court's findings of the statutory grounds for termination and the undisputed evidence. In re J.F.C., 96 S.W.3d at 268. We do not consider evidence that the trial court could have reasonably disbelieved. Id.

The trial court found that Bradford failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child under section 161.001(1)(O). In an order entered on August 20, 2007, the trial court ordered Bradford to pay $50 per month to the Department for child support, submit to a psychological or psychiatric evaluation, attend and cooperate in counseling sessions, successfully complete parenting classes, submit to a drug and alcohol dependency assessment, submit to random drug testing, comply with each requirement in the Department's original or amended safety plan, and notify the Department and trial court of her current residence address. The Department's safety plan clarified some of the requirements under the trial court's order and, additionally, required Bradford to obtain and maintain employment or show a means of providing financial support for the child and obtain appropriate housing and maintain a safe and sanitary home. While there is some

undisputed evidence that Bradford complied with certain portions of the trial court's order, there is evidence in the record that Bradford did not complete the ordered parenting classes, failed to notify the Department of residence address changes, did not make any monthly child support payments, and tested positive for marijuana on two occasions.

Considering all of the evidence in the light most favorable to the trial court's finding and indulging every reasonable inference in favor of that finding, we conclude that the trial court could reasonably have formed a firm belief or conviction that Bradford failed to comply with the provisions of a court order that specifically established the actions necessary for Bradford to obtain the return of the child. Thus, the evidence is legally sufficient to support the trial court's finding of a statutory ground for termination.

Considering the evidence in a neutral light, we are still presented with uncontroverted evidence that Bradford failed to comply with the provisions of the trial court's order. While it is true that Bradford completed about half of the parenting classes she was ordered to complete, submitted to a psychological evaluation, attended counseling until terminated by the counselor, and was evaluated and tested for drugs, Bradford still failed to comply with all of the provisions of the trial court's order.[3] Considering this

---

[3] Bradford contends that the statutory ground for termination based on the failure to comply with a court order requires proof of a contumacious failure to comply. However, the authority cited by Bradford to support this position does not support the position. Bradford cites In re J.R., 171 S.W.3d 558 (Tex.App.–Houston [14th Dist.] 2005, no pet.), in support of her contention that the statutory ground requires contumacious violation of a court order, but the opinion in no way attempts to establish such a standard. In fact, the court expressly states that the issue of whether proof of section 161.001(1)(O) had been presented was not before it. See id. at 570 n.5. Further, the legislature included a statutory ground for termination based on a contumacious refusal to comply with a court order in section 161.001(1)(I). Clearly, if the legislature had intended for the failure to

undisputed evidence, we cannot say that the trial court could not have reasonably formed a firm belief or conviction of the statutory ground for termination found in section 161.001(1)(O).  See In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).

Because only one statutory ground for termination under section 161.001(1) is necessary to support a judgment of termination, we need not address Bradford's challenges to the sufficiency of the evidence supporting the findings under section 161.001(1)(D) and (E).  See TEX. R. APP. P. 47.1; In re D.M., 58 S.W.3d at 813.

We overrule appellant's second, third, and fourth issues.

### Best Interest of the Child

By her first issue, Bradford contends that the evidence is legally and factually insufficient to support the trial court's conclusion that termination is in the best interest of the child.  To terminate a parent's rights, the evidence must establish by clear and convincing evidence that termination is in the best interest of the child.  See Holley, 544 S.W.2d at 370; Horvatich, 78 S.W.3d at 596.  There is a strong presumption that the best interest of a child is served by keeping custody in the natural parent.  In re D.T., 34 S.W.3d 625, 641 (Tex.App.–Fort Worth 2000, pet. denied).  Termination should not be used to merely reallocate children to better and more prosperous parents.  In re D.M., 58 S.W.3d at 814.

---

comply with a court order under section 161.001(1)(O) to have required a contumacious failure, it could have easily expressed that intent.  Compare § 161.001(1)(I) with § 161.001(1)(O).

In determining whether termination of a parent-child relationship would be in the best interest of the child, courts may consider a number of factors, including: the desires of the child, the present and future physical and emotional needs of the child, the present and future emotional and physical danger to the child, the parental abilities of the person seeking custody, programs available to assist those persons in promoting the best interest of the child, plans for the child by those individuals or by the agency seeking custody, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and any excuse for the acts or omissions of the parent. Holley, 544 S.W.2d at 371-72. We will review the evidence under each of the Holley factors to determine the sufficiency of the evidence to support the trial court's best interest determination.

At the time of trial, the child was two and a half years old. As such, the child was not able to express her desires. However, the evidence establishes that Bradford regularly visited the child, interacted appropriately with the child during these visits, and had bonded with the child. There is no evidence that the child has any greater physical or emotional needs than any other two year old child. The Department presented evidence that Bradford has a history of being involved in abusive relationships, however, the caseworker testified that the Department does not believe that Bradford physically abused the child. Additionally, the caseworker expressly testified that Bradford would pose no danger to the child during supervised visitation. Bradford's failure to comply with all provisions of the trial court's order, as discussed above, gives rise to a reasonable inference that Bradford may not have the parental abilities to put the best interest of the child first. In addition,

9

Bradford's testing positive for drugs on two separate occasions, even though both occasions occurred at times when Bradford did not have possession of the child, is significant when considering Bradford's parental abilities. While there are programs available to assist Bradford in promoting the best interest of the child, Bradford's failure to comply with the trial court's order and the Department's service plan and avail herself of such programs renders the availability of such programs less significant. As to Bradford's acts or omissions that affect whether the parent-child relationship is proper, there was undisputed evidence that Bradford continued her relationship with McGee after she was aware that the Department suspected that McGee had caused the child physical injuries. While there is no direct evidence that Bradford allowed McGee to have contact with the child after this incident, she maintained the relationship with McGee after the incident and it is reasonable to infer that she allowed McGee to have contact with the child during the time that Bradford had custody of the child. The Department indicated that its plans for the child were to terminate Bradford's parental rights so that the child could be adopted. The Department also indicated that it would first attempt to place the child with her biological father. However, termination of Bradford's parental rights is not justified by the Department's plan for adoption of the child so long as the biological father retains his parental rights.

Considering this evidence in the light most favorable to the trial court's determination that termination would be in the child's best interest, we conclude that the evidence of Bradford's history of abusive relationships, positive drug tests, failure to comply with the trial court's order and avail herself of programs that could assist her in promoting the best

10

interest of the child, combined with the reasonable inference that she allowed McGee to have contact with the child after she was aware that McGee was suspected of having injured the child is sufficient evidence to allow the finder of fact to have formed a firm belief or conviction that termination of Bradford's parental rights would be in the child's best interest.  See In re J.F.C., 96 S.W.3d at 266.

However, when the totality of the evidence is reviewed in a neutral light, we conclude that the evidence is insufficient to establish that termination of the parent-child relationship would be in the best interest of the child.  The Department's plans for the child are to attempt to place the child with her biological father and, if those attempts fail, to attempt to place the child with an adoptive family.  Because the Department cannot adopt the child so long as the biological father retains his parental rights, termination of Bradford's parental rights will not necessarily advance the goal of prompt and permanent placement of the child in a safe environment.  See § 263.307(a).  Further, termination of Bradford's parental rights would remove Bradford's duty to support the child.  See § 161.206; Holick, 685 S.W.2d at 20.  The child's biological father testified that he does not believe that it would be in the child's best interest for Bradford's rights to be terminated.  Bradford and the child have developed a bond.  The Department's caseworker conceded that Bradford would pose no threat to the child during supervised visits.  The child's biological father testified that he would be willing to comply with any court orders that allowed Bradford to have supervised visitation with the child.

We must remain mindful that there is a strong presumption that the best interest of a child is served by keeping custody in the natural parent.  In re D.T., 34 S.W.3d at 641.

While the Department need not prove definitive plans for the child's placement, see In re C.H., 89 S.W.3d at 28, we can see no compelling benefit that would be gained by severing the bond that exists between Bradford and the child at this time, especially in light of the Department's current plans to attempt to place the child with her biological father. The evidence established that the child was doing well in the temporary managing conservatorship of the Department with Bradford visiting the child under supervision. As the evidence establishes that Bradford poses no threat to the child during supervised visits and since the Department's goal of providing the child stability and permanence through adoption cannot currently be accomplished, we cannot see how the finder of fact could form a firm belief or conviction that the drastic act of termination would be in the best interest of the child.[4] Consequently, we conclude that the evidence is factually insufficient to support the trial court's determination that termination of Bradford's parental rights is in the best interest of the child.

We sustain Bradford's first issue.

---

[4] Our conclusion that the Department has failed to present factually sufficient evidence regarding the best interest of the child is not based on the Department's inability to identify its definitive plans for the child. Rather, our conclusion is based, in large part, on the Department's reliance on benefits that the child will only obtain if the child is permanently placed in a stable environment. Since the Department will first attempt to place the child with her biological father, termination of Bradford's parental rights will not significantly advance the Department's plans and the maintenance of Bradford's parental rights will not significantly impede the Department's plans.

Conclusion

Because we hold that the record contains factually insufficient evidence that termination of Bradford's parental rights is in the best interest of the child, we reverse the trial court's order and remand the cause for a new trial on all issues.


Mackey K. Hancock
Justice

13